IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JEANINE B.,<br><br>    Plaintiff,<br><br>vs.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br><br>    Defendant. | Case No. 2:24-cv-00621-CMR<br><br>**MEMORANDUM DECISION AND ORDER AFFIRMING ALJ DECISION**<br><br>Magistrate Judge Cecilia M. Romero |

  All parties in this case have consented to the undersigned conducting all proceedings (ECF 6). 28 U.S.C. § 636(c). Plaintiff Layna P. (Plaintiff), pursuant to 42 U.S.C. § 405(g), seeks judicial review of the decision of the Commissioner of Social Security (Commissioner) denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act (Act). After careful review of the record (Certified Administrative Record (Tr.), ECF 7), the parties' briefs (ECF 11, 18, 19), the undersigned concludes that the Commissioner's decision is supported by substantial evidence and free from reversible error. For the reasons discussed below, the court hereby DENIES Plaintiff's Motion for Review of Agency Action (ECF 11) and AFFIRMS the decision of the Commissioner.

         **I. BACKGROUND**

  Plaintiff applied for DIB in July 2022 (Tr. 59). Plaintiff was 63 years old in December 2021, when she claimed that she became disabled due to fibromyalgia, arthritis, and Crohn's disease (Tr. 59). She had worked in the relevant past as a service representative, reservation clerk, claims clerk, and receptionist, which were semi-skilled and skilled occupations with specific

1

vocational preparation (SVP) levels of 4, 5, and 7 (Tr. 23). *See* 20 C.F.R. § 404.1568(b), (c) (defining semi-skilled and skilled work); Social Security Ruling (SSR) 00-4p, 2000 WL 1898704, at *3 (explaining SVP levels).

The ALJ followed the Commissioner's five-step sequential evaluation process for disability claims (Tr. 14–24). *See* 20 C.F.R. § 404.1520(a)(4). In a decision dated January 23, 2024, the ALJ determined at step two that Plaintiff had severe impairments of degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, arthritis of the shoulders, fibromyalgia, and Crohn's disease (Tr. 17). The ALJ found non-severe mental impairments of pain disorder and adjustment disorder (Tr. 17). The ALJ found no limitations in paragraph B criteria other than a mild limitation with concentrating, persisting, or maintaining pace (Tr. 18). *See id*. §§ 404.1520a(d)(1), 404.1522(a).

At step three, the ALJ considered Listings 1.15 and 1.16 for skeletal spine disorders, finding the criteria not met (Tr. 19) The ALJ then found that Plaintiff had the RFC to do a reduced range of sedentary work without any mental limitations (Tr. 19). *See id*. §§ 404.1545(a)(1) ("Your [RFC] is the most you can still do despite your limitations."), 404.1567(a) (defining sedentary work). At step four, the ALJ found that this RFC would allow Plaintiff to do her past relevant work as a receptionist, customer service representative, reservation clerk, and claims clerk (Tr. 23). The ALJ thus concluded that Plaintiff was not disabled (Tr. 23). *See id*. § 404.1520(a)(4)(iv). The ALJ decision became the Commissioner's final decision when the agency's Appeals Council denied her request for review (Tr. 1–6). *See* 20 C.F.R. § 404.981.[1] The court has jurisdiction under 42 U.S.C. § 405(g).

---

[1] References to the Code of Federal Regulations (C.F.R.) are to the 2022 edition.

## II.  STANDARD OF REVIEW

"On judicial review, an ALJ's factual findings [are] 'conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (quoting 42 U.S.C. § 405(g)). The substantial evidence threshold "is not high," and "defers to the presiding ALJ, who has seen the hearing up close." *Id.* at 103, 108. Substantial evidence is "more than a mere scintilla" and "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 103 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Under this deferential standard, the court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). If the evidence is susceptible to multiple interpretations, the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## III.  ARGUMENT

**A.   The ALJ's step-two findings that Plaintiff experienced mild limitations in the B criteria did not mandate the inclusion of any mental limitations in Plaintiff's RFC.**

Plaintiff argues that the ALJ erred in failing to include mental limitations in Plaintiff's RFC despite the ALJ's step two findings (Pl. Br. at 8). At step two of the sequential evaluation process, the ALJ found that Plaintiff had mild limitations in one of the four of the B criteria (concentration, persistence, and pace) and no limitations in the other three B criteria areas (Tr. 17–18). *See* 20 C.F.R. § 404.1520a. As noted by the ALJ, the "limitations identified in the 'paragraph B criteria'" are by definition not an assessment of Plaintiff's RFC (Tr. 18). *See* SSR 96-8p, 1996 WL 374184, at *4 ("[T]he limitations identified in the 'paragraph B' and 'paragraph C' criteria

3

are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.").

The Tenth Circuit has repeatedly rejected the argument that paragraph B criteria findings mandate mental limitations in the RFC determination (*see* Pl. Br. 8–11). In *Beasley v. Colvin*, 520 F. App'x 748 (10th Cir. 2013), the Tenth Circuit held that an "ALJ's finding of 'moderate difficulties' in social functioning in the 'paragraph B' criteria does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment," and that "[t]he ALJ was under no obligation to include limitations in social functioning in [the claimant's] RFC based solely on his finding that she had 'moderate difficulties' in social functioning as part of the distinct step-three analysis." *Id*. at 754. Similarly, in *DeFalco-Miller v. Colvin*, 520 F. App'x 741 (10th Cir. 2013), the court found that "the ALJ's statement . . . that [the claimant] exhibited 'no more than' moderate difficulties maintaining social functioning is neither a medical fact nor nonmedical evidence" relevant to the RFC assessment. *Id*. at 748 (citing SSR 96-8p, 1996 WL 374184, at *4). Much like Plaintiff, the claimant in that case "d[id] not argue that the record evidence, rather than the ALJ's [B criteria finding], compel[led] the inclusion of a . . . limitation in the RFC." *Id*. Thus, the ALJ was not obligated to include any mental RFC limitations after finding that Plaintiff experienced mild limitations in one of the B criteria.

Rather, an ALJ must consider the effects of all the claimant's medically determinable impairments—including those found severe and those found non-severe—when assessing the RFC. 20 C.F.R. § 404.1545(a)(2). Here, the ALJ found at step two that Plaintiff had medically determinable mental impairments of pain disorder and adjustment disorder (Tr. 17). The ALJ found that these impairments were non-severe because they did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities (Tr. 17). *See* 20 C.F.R. §

404.1522(a). In reaching this finding, the ALJ rated the B criteria, concluding that Plaintiff experienced mild limitation in concentration, persistence, and pace (Tr. 18). *See id.* § 404.1520a(d)(1).

Plaintiff claims that "the ALJ did not explain his consideration of the combined effect of all of the claimant's medically determinable impairments—*whether severe or not severe*—in assessing the claimant's RFC," and "he included no narrative discussion describing how the evidence supports his conclusions about each of the four areas of mental functioning" (Pl. Br. at 10–11).[2] However, the ALJ discussed Plaintiff's mental conditions within the special technique analysis regarding the four areas of mental functioning as well as in the RFC analysis and explained why he ultimately concluded that Plaintiff's non-severe mental impairments did not result in any workplace functional limitations (Tr. 17–23).

Within the analysis of Plaintiff's RFC, the ALJ recognized that Plaintiff claimed that she was disabled due to pain and adjustment disorder and "fibro fog" (Tr. 17, 19–23). The ALJ then considered the persuasiveness of the prior administrative medical findings by two State agency psychological consultants, Dr. Ingebretsen and Dr. Hardy (Tr. 22–23). The ALJ noted that both doctors found that Plaintiff did not have a severe mental impairment (Tr. 22–23; *see* Tr. 62, 73). Both doctors found that Plaintiff had only a mild limitation in the B criteria of concentration, persistence and pace (Tr. 62, 73). The ALJ determined that the prior administrative medical findings were persuasive (Tr. 22–23). *See* 20 C.F.R. § 1520c(b).

---

[2] *See Velesquez v. O'Malley*, No. CV 23-1012-DHU-KK, 2024 WL 5053346, at *6 (D.N.M. Dec. 10, 2024); *see also Wells v. Colvin*, 727 F.3d 1061, 1068–69 (10th Cir. 2013) ("[A] conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five. In his RFC assessment, the ALJ must consider the combined effect of all medically determinable impairments, whether severe or not.").

Moreover, the ALJ considered within the RFC analysis that the record did not support that Plaintiff's non-severe mental impairments imposed any functional limitations (Tr. 19–23). The ALJ acknowledged Plaintiff's reports of pain and "fibro fog" but found that her allegations were not fully consistent with the record (Tr. 19–20). He considered that Plaintiff told Dr. Hardy that she could go to the movies, sew and crochet, drive, cook, perform light cleaning, shop independently and usually had a good mood (Tr. 22; *see* Tr. 730–31). She told Dr. Ingebretsen that she had no difficulty managing her finances or affairs, and could drive to run errands, and read (Tr. 22; *see* Tr. 719). Her husband reported that she shopped independently twice a week for up to an hour each trip, could pay attention for "long extended periods," attended church and HOA board meetings, followed written and verbal instructions very well, and got along with authority figures very well (Tr. 22–23; *see* Tr. 252–54). The ALJ thus explicitly found as part of the RFC analysis that Plaintiff did not experience any mental functional limitations that would impose anything more than mild limitations on her ability to concentrate (Pl. Br. at 8–11). *See Nelson v. Colvin*, 2:14-CV-00903-PMW, 2016 WL 3948063, at *2 (D. Utah July 19, 2016) (rejecting Plaintiff's assertion that the ALJ did not discuss non-severe mental impairments in the RFC when ALJ did discuss non-severe impairments and doctor did not impose any functional limitations).

The ALJ discussed the specific evidence supportive of this finding within the section of her decision devoted to the step-two analysis (*see* Tr. 17–18). The Tenth Circuit has recognized that, when evaluating an ALJ's finding at one step of the sequential evaluation process, a reviewing court may look elsewhere in an ALJ's decision to find evidence supportive of that finding. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005) ("[A]n ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment[.]").

Likewise, the Tenth Circuit has held that an ALJ is not required to copy her discussion of the evidence from one part of her decision and paste it into another part. *See Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012) ("The ALJ set forth a summary of the relevant objective medical evidence earlier in his decision and he is not required to continue to recite the same evidence again in rejecting [an] opinion."); *see also Webb v. Comm'r, Soc. Sec. Admin.*, 750 F. App'x 718, 721 (10th Cir. 2018) (The ALJ summarized relevant evidence earlier in the decision, and was not required to repeat that summary in weighing an opinion).

B.  **The ALJ reasonably found that Plaintiff's reports of debilitating mental symptoms were inconsistent with other evidence.**

Plaintiff argues that the ALJ did not adequately evaluate her subjective symptoms (Pl. Br. at 11–15). Plaintiff points to her testimony that fibromyalgia made it "impossible" to walk to the back of a store, and that she sometimes had trouble counting money because fibromyalgia caused "brain fog" (Pl. Br. at 12, 14; *see* Tr. 43). The ALJ acknowledged her subjective symptom statements (Tr. 19–20), but found they were not consistent with the medical evidence and other evidence in the record (Tr. 20).

The RFC assessment must address the claimant's reported symptoms. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 WL 5180304. The ALJ found that Plaintiff's reported symptoms were inconsistent with other evidence (Tr. 20). This finding is due great deference by the court. *See White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002) ("The ALJ enjoys an institutional advantage in making the type of determination at issue here. Not only does an ALJ see far more [S]ocial [S]ecurity cases than do appellate judges, he or she is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion. As a result, the ALJ's credibility findings warrant particular deference."). Here, the ALJ gave well-supported reasons for concluding that Plaintiff's reported mental symptoms were not as severe as she

7

claimed: (1) objective medical evidence was inconsistent with those reported symptoms, and (2) her daily activities were not limited to the extent that his reported symptoms would suggest.[3]

**Objective medical evidence**

First, the ALJ found that Plaintiff's reported symptoms were inconsistent with objective medical evidence. *See* 20 C.F.R. § 404.1529(c)(4) ("[W]e will evaluate your statements in relation to the objective medical evidence."). Even in cases involving mental impairments, "objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms[.]" SSR 16-3p, 2017 WL 5180304, at *5. The ALJ recognized that Plaintiff testified that she had fibromyalgia related brain fog (Tr. 19-20; *see* Tr. 43). This testimony, however, was inconsistent with Dr. Hardy's examination. Dr. Hardy observed that Plaintiff was friendly, cooperative, and "fully invested" in the interview and testing (Tr. 730). She was able to remember three out of three items immediate and two out of three with a five-minute delay. She was able to remember four out of four steps of a verbally presented task (Tr. 730). When asked to estimate her intellectual functioning, she responded "slightly above average" (Tr. 730). Testing confirmed that her functioning was at least in the average range and her verbal skills were in the high-average range as was her full-scale IQ (Tr. 18; *see* Tr. 732). Dr. Hardy found that "[s]he displayed no challenges of attention or concentration" during the evaluation and she had no cognitive difficulty (Tr. 732). Plaintiff did report that she had a "bit of memory issues with appointments and things" (Tr. 731). Plaintiff's argument that the ALJ should have relied on her

---

[3] Agency regulations lay out a number of factors that an ALJ must consider when evaluating a claimant's symptoms. *See* 20 C.F.R. § 404.1529. However, there is a "difference between what an ALJ must consider as opposed to what he must explain in the decision." *Mounts v. Astrue*, 479 F. App'x 860, 866 (10th Cir. 2012). An ALJ is not required to go factor by factor through the evidence, discussing how the evidence relates to each factor. Instead, the ALJ need only set forth the specific evidence on which he relied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000); *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009).

limited testimony, which contradicted medical findings, is untenable (Pl. Br. at 11–15). The ALJ reasonably found that her concentration was not as limited as she claims.

### Plaintiff's daily activities

The ALJ found that Plaintiff's reported symptoms were also inconsistent with her daily activities. *See* 20 C.F.R. § 404.1529(c)(3)(i) (The ALJ considers a claimant's activities when evaluating symptoms). The ALJ contrasted Plaintiff's claimed inability to concentrate with her admitted ability to perform certain tasks that required concentration (Tr. 18, 20, 22). The ALJ cited, for example, Plaintiff's report that she read a great deal (Tr. 18, 20, 22; *see* Tr. 730–32). He also pointed to her ability to drive, shop independently, and follow a simple recipe (Tr. 18; *see* Tr. 730–32). Plaintiff reported that she spent time with her grandchildren and family and attended church (Tr. 731). She was able to go to the movies and restaurants, sew, crochet, and make crafts (Tr. 731). Although the "sporadic performance" of activities like performing a few household tasks "does not establish that a person is capable of engaging in substantial gainful activity," *Frey v. Bowen*, 816 F.2d 508, 516–17 (10th Cir. 1987), an ALJ may consider such activities when, as here, they undercut a claimant's reported symptoms. *See Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010); *Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1349 (10th Cir. 1990).

The findings and discussion by the ALJ at step two are directly relevant to the symptom evaluation, which, in turn, is directly relevant to the RFC assessment: "Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined." *See Poppa*, 569 F.3d at 1171. As such, the court finds that the ALJ's discussion of this evidence at step two in conjunction with the ALJ's finding within the RFC analysis that "the evidence does not establish [Plaintiff's] mental impairments as being significant enough to impose any functional limitations" (Tr. 31) was sufficient to demonstrate

that the ALJ considered Plaintiff's non-severe mental impairments as part of the RFC assessment. Substantial evidence therefore supports the ALJ's finding that Plaintiff did not experience any mental RFC limitations. *See Biestek*, 587 U.S. at 103.

## IV.    CONCLUSION

Because the ALJ's decision is supported by substantial evidence and legally sound, it is AFFIRMED. Judgment shall be entered in accordance with Fed. R. Civ. P. 58, consistent with the U.S. Supreme Court's decision in *Shalala v. Schaefer*, 509 U.S. 292, 296–304 (1993).

DATED this 2 September 2025.

*Cecilia M. Romero*
Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah